UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JAMAR BETHUNE,                                             :

                       Petitioner,                  :          **<u>MEMORANDUM DECISION</u>**

              - v -                           :                21-cv-2735 (DC)

ANTHONY RUSSO,                                          :
Superintendent, Green Haven Correctional
Facility,                                                         :

                   Respondent.                 :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPEARANCES:           JAMAR BETHUNE
                                    Petitioner *Pro Se*
                                    DIN 09-A-3297
                                    Green Haven Correctional Facility
                                    PO Box 4000
                                    Stormville, New York 12582

                                    ERIC GONZALEZ, Esq.
                                    District Attorney, Kings County
                                    By:    Leonard Joblove, Esq.
                                            Morgan Dennehy, Esq.
                                            Assistant District Attorneys
                                    350 Jay Street
                                    Brooklyn, New York 11201
                                            Attorney for Respondent

CHIN, Circuit Judge:

On June 5, 2009, following a jury trial, Petitioner Jamar Bethune was convicted in the Supreme Court of New York, Kings County (Tomei, *J.*), of murder in the second degree and criminal possession of a weapon in the second degree.  Dkt. 8 at 6.  On June 16, 2009, the court sentenced Bethune to concurrent prison terms of twenty-five years to life on the murder count and fifteen years plus five years of post-release supervision on the criminal possession of a weapon count.  *Id.*  On July 22, 2015, the Appellate Division, Second Department affirmed Bethune's convictions.  *People v. Bethune*, 12 N.Y.S.3d 902 (2d Dep't 2015) ("*Bethune I*").  On November 13, 2015, the Court of Appeals granted leave to Bethune to appeal from the order of the Appellate Division.  *People v. Bethune*, 43 N.E.3d 377 (N.Y. 2015) (Fahey, *J.*) ("*Bethune II*").  On June 8, 2017, the New York Court of Appeals affirmed the Appellate Division's order upholding the judgment of conviction.  *People v. Bethune*, 81 N.E.3d 835 (N.Y. 2017) (Wilson, *J.*) ("*Bethune III*").

On April 30, 2018, proceeding *pro se*, Bethune filed a motion to vacate his judgment of conviction pursuant to CPL § 440.10.  Dkt. 8 at 8.  On July 15, 2019, the Supreme Court, Kings County, (Douglas, *J.*) denied the motion.  Dkt. 8-4 at 76-83.  The court advised Bethune that he could apply to a Justice of the Appellate Division for a certificate granting leave to appeal so long as the application was filed within 30 days of being served with the court order denying the motion.  *Id.* at 84.  He did not do so.

2

On May 27, 2021, proceeding *pro* se, Bethune filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court (the "Petition").  Dkt. 1.  Respondent, represented by the Kings County District Attorney's Office (the "People"), filed its opposition on April 10, 2024.  Dkt. 8.  Bethune did not file a reply.

On March 15, 2024, the case was reassigned to the undersigned.

For the reasons that follow, the Petition is DENIED.

### STATEMENT OF THE CASE

**A.**     *The Facts*[1]

The evidence at trial established the following:

On March 12, 2008, 18-year-old Jamal Bethune spent the night at his friend Edwin Rodriguez's apartment.  Dkt. 8-5 at 421-26.  Several of Edwin's family members were at the apartment, including Edwin's mother, Victoria Rodriguez, Edwin's three younger sisters, Jahira, Latoya, and Shaniece, his niece, Victoria, and his thirteen-year-old-cousin, Marquis Perez, whom everyone called "Brother."  *Id.* at 439, 484.

When Bethune and Edwin entered Edwin's room that night, Bethune told Edwin he wanted to show him something.  *Id.* at 460.  Bethune pulled a loaded revolver from his book bag, took out the bullets, and replaced them.  *Id.* at 461.  He then put the

---

[1] The facts are drawn from the People's brief on the direct appeal to the Appellate Division, which was filed in this Court as part of Respondent's opposition to the Petition.  The recitation of facts set forth in the state appellate brief are supported by detailed citations to the record, including the transcript of the suppression hearing.  *See* Dkt. 8-2 at 59-79.

revolver back in his book bag and Edwin hid the book bag behind his bed.  *Id.* at 462.

When Edwin asked where Bethune got the revolver, Bethune replied "Chill" and "Slice,"

meaning "cut off with the talking."  *Id.* at 431-32.

      The next morning, March 13, 2008, at 11:00 AM, Bethune accompanied

Edwin to court so that he could reschedule community service for a separate crime.  *Id.*

at 436.  The two then returned to Edwin's house around 3:00 PM.  *Id.* at 438.  When they

returned, Bethune sat himself in Edwin's living room, playing with his phone, while

Edwin's mother, his fourteen-year-old sister Jahira, Marquis, and Edwin's two-year old

niece, Victoria, sat around him.  *Id.* at 438-39.  Edwin left the room and moved Bethune's

gun to his sister Shaniece's room so that the children in the apartment would not find it.

*Id.* at 439-40.

      Edwin's mother then left the living room to check on dinner.  *Id.* at 488.

When this happened, Marquis began to taunt Bethune, calling him names and

threatening to beat him up.  *Id.* at 489-90.  Bethune then walked into Edwin's room

where Edwin was changing his clothes and asked for his gun.  *Id.* at 441.  Edwin told

Bethune where it was, and Bethune began to walk to Shaniece's room to retrieve it.  *Id.*

at 442.  As Bethune walked by, Marquis jumped out from behind a wall, scaring

Bethune.  *Id.* at 491-92.  Marquis then sat back down on the couch in the living room

with Jahira.  *Id.* at 486.  Bethune thereafter retrieved the gun, returned to the living room

with the gun, silently walked up to Marquis, and shot him twice in the head. *Id.* at 494-99.

Edwin and his mother ran into each other just outside the kitchen as Jahira ran toward them, crying and screaming at Bethune, "Why you shoot Brother?" *Id.* at 443. Bethune then went into Edwin's bedroom and threw the gun on the bed, telling Edwin to "pick that up." *Id.* at 534. Bethune was screaming that he did not know the gun was loaded to which Edwin replied, "no, you going to jail." *Id.* at 445. Edwin, who did not see the gun on the bed, asked Bethune where he put the gun. *Id.* When Bethune told Edwin it was on the bed, Edwin told Bethune to get it. *Id.* Although Bethune replied "I ain't getting nothing, you get it," Bethune grabbed his gun and ran out the door. *Id.* at 445-46.

In the meantime, Edwin's mother called 911, and told Shaniece and Jahira to get Marquis's mother, Tracy Sanders. *Id.* at 500.

At 5:00 p.m., Police Officer Ruben Thimothe of the 81st Precinct and his partner were in a police car when they received a call to go to Edwin's apartment. *Id.* at 284. When they arrived, Officer Thimothe observed an older woman and two younger women screaming hysterically and a young man slumped over a couch on his left side, bleeding profusely from a head injury. *Id.* at 278. After calling EMS on their police radio, they preserved the crime scene, not letting anyone in or out. *Id.* at 279.

Sophia Specht, a paramedic with the Emergency Medical Services of the New York City Fire Department, arrived at the building and saw an adult woman outside, crying hysterically, "My baby.  My baby."  *Id.* at 300-01.  Ms. Specht went upstairs to the apartment and saw a young boy, about twelve years old, slumped on a couch, barely breathing.  *Id.* at 301.  She observed he had bilateral head wounds and had lost "a huge amount of blood."  *Id.* at 302.  She placed him on a long board, removed his clothing and brought him to the ambulance.  *Id.* at 301.  The ambulance took Marquis to Kings County Hospital, where he died two days later.  *Id.* at 394.

Detective John Roman was put in charge of the investigation. *Id.* at 358. After talking with some of the officers at the scene, Detective Roman brought Edwin to the 81st precinct to interview him as a witness to the shooting, where they spoke for about an hour and a half.  *Id.* at 360.

Meanwhile, at approximately 6:30 p.m., Police Officer Kevin DeLeon along with three other officers apprehended Bethune nearby in Brooklyn and brought him to the 81st Precinct where he was placed in an interview room.  *Id.* at 317.  At 8:00 p.m., Detective Roman spoke with Bethune for about an hour in the presence of Detective Sidney Strobert from the Brooklyn North Homicide Task Force.  *Id.* at 362-63. After Bethune was read and waived his *Miranda* rights, the detective spoke with Bethune about the shooting.  *Id.* at 364.  Bethune first claimed that the gun used in the shooting was already at Edwin's house.  *Id.* at 367.  Bethune asserted he and Marquis

were playing around with the gun, and he pointed it at Marquis's head and the gun accidentally went off twice, striking Marquis in the head.  *Id.*  He stated that he threw the gun in the garbage can outside the apartment and took a cab home.  *Id.* at 371.  In response to follow-up questions by Detective Roman, Bethune claimed that a friend gave him the gun.  *Id.* at 369.

Bethune agreed to make a written statement and so Detective Roman gave him a pen and paper.  *Id.* at 371.  After approximately twenty minutes, when Bethune was finished, he signed the statement.  *Id.*  Detective Roman also signed the statement and wrote the time as 9:10 p.m.  *Id.*  In this statement, Bethune wrote essentially what he told the officers, except he added that he did not know the gun was loaded and that Marquis was "a good friend of mine."  *Id.* at 385.

At 10:00 p.m., Bethune agreed to give a video statement to Assistant District Attorney Itkin who read him his *Miranda* rights at the beginning of the interview.  *Id.* at 340, 344.  Immediately upon conclusion of the interview, the video technician informed ADA Itkin that the sound had not been working during the first two minutes of the video -- the time when ADA Itkin advised Bethune of his *Miranda* rights.  *Id.* at 342.  After learning this, ADA Itkin went back on video with Bethune, confirmed with him what she had asked him previously, and went through his *Miranda* rights with him again.  *Id.*

Following the re-recording, ADA Itkin met with the police who informed her that they were unable to find the gun in the garbage can. *Id.* at 346. ADA Itkin and Detective Roman drafted a search warrant for 808 Park Place, Bethune's residence. *Id.* After dropping off the warrant at the residence, ADA Itkin returned to the precinct where she learned that Bethune agreed to go on videotape again. *Id.* at 347-48. This second interview occurred at 3:45 a.m. *Id.* In both video statements, Bethune continued to provide inconsistent details of what happened earlier that night, but each time, he admitted to holding and firing the gun.

On March 16, 2008, Dr. Odette Hall of the Office of the Chief Medical Examiner of New York City, performed an autopsy on the body of Marquis Perez. *Id.* at 549. She determined that the cause of death was a gunshot wound to his head with injury to his brain. *Id.* at 555.

## B.   Procedural History

### 1.   *State Court Proceedings*

#### a.   *The Indictment and Motion to Suppress*

Bethune was indicted on one count of Murder in the Second Degree (Penal Law § 125.25(1)), one count of Manslaughter in the First Degree (Penal Law § 125.20), one count of Manslaughter in the Second Degree (Penal Law § 125.15), and two counts of Criminal Possession of a Weapon in the Second Degree (Penal Law § 265.02). Dkt. 8-2 at 6. Following a motion to suppress Bethune's written, oral, and videotaped

statements about the shooting, the court held a *Huntley* hearing on May 26, 2009. *Id.* at 1-53; Dkt. 8 at 19. The People called Officer Kevin DeLeon, Detective John Roman, and Detective Sidney Strobert. *Id.* The defense did not call any witnesses. Dkt. 8-5 at 53. The court denied the motion to suppress, finding that the People had met their burden of proving that the statements made to the police authorities were made "voluntarily, freely, knowingly and intelligently." *Id.* at 55.

   **b.**    ***The Trial, Conviction, and Sentence***

Trial commenced on May 27, 2009, with jury selection. Dkt. 8 at 5. Pursuant to *People v. Antommarchi*, 604 N.E.2d 95 (N.Y. 1992), the court advised Bethune of his right to be present at all bench conferences. *Id.* Bethune acknowledged and waived his *Antommarchi* rights. Dkt. 8-5 at 58-59. The court then conducted three rounds of voir dire, and a jury was selected. *Id.* at 61-213.

The People called Jahira Figueroa, who gave her account as the only eyewitness of the shooting, *id.* at 482-526, and Edwin Rodriguez, *id.* at 416-81, and Victoria Rodriguez, *id.* at 527-46, who each discussed their accounts of what happened inside the apartment when Marquis was shot. Detectives Roman, *id.* at 355-92, and Strobert, *id.* at 399-415, as well as ADA Itkin, *id.* at 336-55, also testified for the People, discussing their interactions with Bethune and witnesses after it took place. Finally, Detective John Kraljic of the Firearms Analysis Unit of the New York Police Department, a firearms expert, described and demonstrated how a revolver operates.

*Id.* at 575-603.  The two videotaped interviews of Bethune, a signed *Miranda* warnings form, and Bethune's handwritten statement were also entered into evidence.  *Id.* at 342, 364, 372.  The defense rested without calling any witnesses.

On June 5, 2009, the jury told the court that it had reached a verdict and announced that it had found Bethune guilty of Count One, murder in the second degree (N.Y. Penal Law § 125.25(1)) and Count Four, criminal possession of a weapon in the second degree (N.Y. Penal Law § 265.003(1)(b)) (intent to use unlawfully).  Dkt. 8-5 at 685-88.  Before the jury was dismissed, however, the court clerk noticed that the verdict sheet was not marked as to Count Four and the court sent the jury back to the jury room to correct the incomplete verdict sheet.  *Id.* at 689-90.

When the jury completed the verdict sheet, it returned an inconsistent verdict of guilty on Count One (second-degree murder), not guilty on Count Four (second-degree weapon possession based upon intent to use unlawfully), but guilty on Count Five (second-degree weapon possession based upon possession outside the home or place of business).[2]  *Id.*

Bethune moved to set aside the verdict as repugnant, and the court agreed.  *Id.*  The court advised the parties that he would charge the jury that finding

---

[2] There were five counts total on the jury sheet -- the other two being manslaughter in the second degree and manslaughter in the first degree.  *Id.* at 690.

Bethune guilty of Count One, an intentional crime,[3] was inconsistent and repugnant to the jury's verdict of not guilty under Count Four -- the intent to use a weapon against another.  The court then recharged the jury.  *Id.* at 693.  Upon receiving a request from the jury, the court gave the "expanded charge on intent" to the jury with no objection from the attorneys.[4]  *Id.* at 694-700.  After hearing the re-charge on the crimes, the jury resumed deliberations and ultimately convicted Bethune of both Count One and Count Four.  *Id.* at 84.

On June 16, 2009, the court (Tomei, *J.*) sentenced Bethune to concurrent prison terms of twenty-five years to life on the murder count and fifteen years, plus five years of post-release supervision, on the weapon possession count.  *Id.*

c.   ***The Direct Appeal***

In March 2014, Bethune appealed his judgment of conviction to the Appellate Division, Second Department, asserting the following claims: (1) the trial court erred by resettling the trial transcripts without holding a full hearing in Bethune's presence, thus violating his due process rights; (2) the trial court erred in its re-charge to

---

[3] Although the court advised the parties that it would recharge the jury because Count One was an "intentional" crime, the trial transcript recorded the word "intentional" as "unintentional" five times.  Dkt. 8 at 80-81.  This transcript error was not realized until Bethune filed his timely notice of appeal in March 2014.  *Id.* at 6-7.  The court reporter thereafter corrected the record.  *Id.* at 7.

[4] It is unclear as to whether Bethune was present during the recharge.

the jury by purportedly instructing the jury that second-degree murder was an "unintentional" crime rather than an "intentional" one, thereby misstating the legal principle and eliminating the People's burden of proof on the intentional murder count; and (3) the jury verdict was against the weight of the credible evidence presented at trial. Dkt. 8-2 at 31, 38, 46.

On July 22, 2015, the Appellate Division unanimously affirmed Bethune's conviction. *Bethune I*, 12 N.Y.S.3d at 902. It held the trial transcript had been properly resettled and that Bethune's conviction of murder in the second degree was supported by the weight of the evidence. *Id.* at 902-03. On November 13, 2015, Bethune was granted leave to appeal to the Court of Appeals. *See Bethune II*, 43 N.E.3d at 377 (Fahey, J.). On June 8, 2017, the Court of Appeals unanimously affirmed the Appellate Division's order, finding that the "Supreme Court did not act outside its discretion to resettle the transcript without a hearing." *Bethune III*, 81 N.E.3d at 836.

### d.    *State-Collateral Review*

By *pro se* motion on April 30, 2018, in the Supreme Court, Kings County, Bethune moved to vacate his judgment of conviction pursuant to Criminal Procedure Law § 440.10 based on a claim of ineffective assistance of counsel. Dkt. 8 at 8. Bethune argued that trial counsel was ineffective for three reasons: (1) trial counsel failed to move to suppress Bethune's statements to investigators when his *Miranda* warnings allegedly contained an improper "preamble"; (2) trial counsel's performance was

12

deficient during jury selection; and (3) trial counsel failed to advance the defense's

theory that Marquis's death was a result of Bethune's gun accidentally discharging. *Id.*

On October 1, 2018, the People opposed the motion. Dkt. 8-4 at 48.

On July 15, 2019, the Supreme Court, Kings County denied Bethune's

April 30, 2018 motion, finding that Bethune had failed to establish that his trial counsel

was ineffective. *Id.* at 80-83. Bethune did not seek leave to appeal from the court's July

15, 2019 decision. Dkt. 8 at 8.

**2.** *The Petition*

On May 27, 2021, Bethune filed the Petition, *pro se*, pursuant to 28 U.S.C.

§ 2254. Dkt. 1. Bethune raises the same claims that he asserted on his direct appeal and

in his CPL § 440.10 motion. *Id.* at 5-6. Additionally, Bethune asserts a claim of actual

innocence to overcome his failure to file the habeas petition within the one-year statute

of limitations. Dkt. 6 at 1. The Kings County District Attorney's Office filed its

opposition to the Petition on April 10, 2024. Dkt. 8.

The case was reassigned to the undersigned on March 15, 2024.

## DISCUSSION

**I.** *Federal Review of State Convictions*

**A.** *Applicable Law*

A federal court may not grant a habeas petition on a claim that was

adjudicated on the merits in state court unless that adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Harrington v. Richter*, 562 U.S. 86, 97-98 (2011); *Waiters v. Lee*, 857 F.3d 466, 477 (2d Cir. 2017).  Hence, when a claim is adjudicated on the merits, the state court's decision must be accorded "substantial deference."  *Fischer v. Smith*, 780 F.3d 556, 560 (2d Cir. 2015) (citing *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009)).  "A federal court may reverse a state court ruling only where it was 'so lacking in justification that there was . . . [no] possibility for fairminded disagreement.'"  *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (per curiam) (quoting *Harrington*, 562 U.S. at 103); *see also Wetzel v. Lambert*, 565 U.S. 520, 524 (2012) (per curiam) (quoting *Harrington*, 562 U.S. at 102).

A federal court cannot review a habeas petition unless the petitioner "has exhausted the remedies available" in state courts.  28 U.S.C. § 2254(b)(1)(A).  This requirement affords state courts the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)).  "This requires that the prisoner 'fairly present' his constitutional claim to the state courts, which he accomplishes 'by presenting the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it.'"  *Jackson v.*

14

*Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005)).

Moreover, "federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). In other words, if the state court refused to consider an argument because it was procedurally barred under state law, the argument is barred from federal habeas review so long as the procedural bar is "adequate to support the judgment." *Murden v. Artuz*, 497 F.3d 178, 191-92 (2d Cir. 2007) (quoting *Jimenez v. Walker*, 458 F.3d 130, 138 (2d Cir. 2006)). For an independent and adequate state ground to bar habeas relief, the state court rendering the judgment must "clearly and expressly state that its judgment rests upon a state procedural bar." *Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) (quoting *Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996)).

If a claim is procedurally barred pursuant to an independent and adequate state rule, a federal habeas court may not review it on the merits unless the petitioner demonstrates (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

15

**B.**     *Analysis*

In the Petition, Bethune asserts actual innocence as a gateway claim in addition to what was asserted on his direct appeal and in his CPL § 440.10 motion: (1) ineffective assistance of counsel for (i) failing to move to suppress Bethune's statements to investigators, (ii) deficient performance during jury selection, and (iii) failing to advance the defense's theory that the gun accidentally discharged; (2) the verdict was not supported by the weight of the evidence; (3) the trial court erred in resettling the transcripts without holding a full hearing in Bethune's presence; and (4) the trial court erred in its re-charge to the jury, misstating the legal principle by purportedly instructing the jury that second-degree murder was an "unintentional" crime rather than an "intentional" one.  Dkt. 6 at 1; Dkt. 1 at 5-7; Dkt. 8-2 at 31-53.  I address each claim in turn.

**1.**     *Bethune's Petition is Untimely*

Under the 1996 Antiterrorism and Effective Death Penalty Act ("AEDPA"), Bethune was required to file a petition for a writ of habeas corpus no later than one year from the "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2444(d)(1)(A); Dkt. 5 at 5.  For purposes of AEDPA, a conviction becomes final when a defendant's time to seek certiorari in the Supreme Court expires.  *See Ross v. Artuz*, 150 F.3d 97, 98 (2d Cir. 1998).  Under Rule 13 of the Supreme Court of the United States, "a petition for

16

a writ of certiorari to review a judgment in any case, civil or criminal, entered by a state court of last resort or a United States court of appeals (including the United States Court of Appeals for the Armed Forces) is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment." Because the Court of Appeals affirmed Bethune's judgment of conviction on June 8, 2017, his time to seek certiorari expired on September 6, 2017. The Petition was not filed until May 27, 2021. Accordingly, it is untimely.

Bethune acknowledges that his petition is time-barred, but he argues that he is nevertheless innocent, and, thus, his procedural default should be excused. Dkt. 6 at 1. Indeed, untimeliness can be excused where a petitioner has a valid claim of actual innocence, which is found only in a "narrow class of 'truly extraordinary' cases." *Hyman v. Brown*, 927 F.3d 639, 665 (2d Cir. 2019) (quoting *Schlup v. Delo*, 513 U.S. 298, 338 (1995)). To obtain relief, a habeas petitioner must make a "sufficiently credible and compelling" claim of innocence. *See Jimenez*, 96 F.4th at 185 (quoting *Hyman*, 927 F.3d at 657). For the claim to be credible, it must be supported by new reliable evidence that was not presented at trial. *See Rivas v. Fischer*, 687 F.3d 514, 541 (2d Cir. 2012). For the claim to be compelling, it must "demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find [the petitioner] guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 538 (2006).

Bethune has not presented any new evidence to support his gateway actual innocence claim.  Indeed, Bethune does not meaningfully argue his claim of actual innocence at all in the Petition -- the only time this claim is referenced in the Petition is when Bethune states that he is "using a gateway claim to overcome [the time bar] under the [AEDPA] filing requirement."  Dkt. 6 at 1.  Bethune has therefore not made a credible and compelling claim of innocence.  Accordingly, Bethune's Petition fails.

2.    *The Ineffective Assistance of Counsel Claims*

Even assuming timeliness, the Petition fails on the merits.  Bethune next argues that he is entitled to habeas relief on his claims that trial counsel was ineffective at various stages of the case, namely that: (1) his trial counsel failed to move to suppress his statements to investigators on the grounds that his *Miranda* warnings were allegedly proceeded by an improper "preamble"; (2) his counsel committed errors during the jury selection process by failing to report the content of bench conferences to Bethune and allowing unqualified jurors to serve on the jury; and (3) his counsel failed to adequately advance the defense's theory that the victim's death was a result of Bethune's gun accidentally discharging.  Dkt. 1 at 5.  I address Bethune's ineffective assistance of counsel claims together.

The Kings County Supreme Court (Douglas, *J.*) considered these claims in denying Bethune's § 440.10 motion and concluded that they were without merit.  Dkt. 8-

18

4 at 5.  This determination is entitled to "substantial deference," *Fischer*, 780 F.3d at 560, and will not be overturned by a federal court conducting habeas review unless the petitioner can establish that the state court's conclusion was "unreasonable."  *See* 28 U.S.C. § 2254(d).  Bethune has not done so here.

In general, to prevail on a claim of ineffective assistance under federal law, a petitioner must (1) show that counsel's performance was so deficient as to fall below "an objective standard of reasonableness"; and (2) establish prejudice by demonstrating a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).  In the context of a habeas petition under 28 U.S.C. § 2254, "[e]stablishing that a state court's application of *Strickland* was unreasonable . . . is all the more difficult.  The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' . . . and when the two apply in tandem, review is 'doubly' so."  *Harrington*, 562 U.S. at 105 (collecting cases).  Therefore, "[t]he operative question" when a federal court reviews a state court's ineffective assistance of counsel ruling is "not whether [the] federal court believes the state court's determination was incorrect, but rather whether that determination was objectively unreasonable," *Waiters*, 857 F.3d at 478 (alterations adopted) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

The standard to establish an ineffective assistance of counsel claim under New York law is lower than under federal law.  *See People v. Honghirun*, 78 N.E.3d 804,

807 (N.Y. 2017).  In New York, a defendant must show only "that counsel failed to

provide meaningful representation."  *People v. Alvarez*, 125 N.E.3d 117, 120 (N.Y. 2019)

(citing *People v. Stultz*, 810 N.E.2d 883 (N.Y. 2004); *People v. Baldi*, 429 N.E.2d 400 (N.Y.

1981)).  Unlike the federal standard, *see Strickland*, 466 U.S. at 694, under the state

standard, the defendant is not required to demonstrate that he was prejudiced by the

ineffective assistance, *see Alvarez*, 125 N.E.3d at 120.

     a.     *The Pre-**Miranda** Questioning*

     Bethune first argues that his trial counsel was ineffective for failing to

move to suppress Bethune's statements to investigators on the grounds that his *Miranda*

warnings were allegedly proceeded by an improper "preamble."  Dkt. 1-3 at 17-18.  In

support of his argument, Bethune points to a one-minute portion of his first videotaped

statement where the audio malfunctions, concluding that this audio malfunction was

the result of investigators "concealing" this preamble.  Dkt. 1-3 at 17.  But Bethune has

not provided any details of what was contained in the alleged preamble, or what

"promises" were made to him.  Nor has he asserted that he informed trial counsel of any

of these alleged improprieties so that they could be raised at the pre-trial suppression

hearing.

     Moreover, the sworn testimony offered at the pre-trial suppression

hearing and at trial contradicts Bethune's claims.  ADA Itkin testified that she

administered *Miranda* warnings to Bethune at the beginning of their conversation,

found out about the audio malfunction, and made a second recording in which she re-read the *Miranda* warnings and had Bethune confirm that he had already waived his rights at the start of the first recording.  Dkt. 8-5 at 341-42.  She also testified that she had no contact with Bethune before the first interview, nor between the first and second interviews.  *Id.* at 340, 350.

Furthermore, defense counsel moved to suppress Bethune's written, oral, and videotaped statements and cross-examined the People's witnesses during the pre-trial suppression hearing, inquiring into the period in the first videotaped statement when the audio was not functioning.  *Id.* at 37-43.  The fact that counsel was unable to suppress Bethune's statements does not mean that he was ineffective.  *See Harrington*, 562 U.S. at 791 ("[I]t is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy.").  This claim accordingly fails.

**b.**    *The Jury Selection Process*

Bethune next raises several claims regarding his counsel's performance during the jury selection process including that: (i) trial counsel failed to ensure that the minutes included who was speaking and what occurred at bench conferences; (ii) trial counsel failed to report to Bethune the content of those bench conferences; (iii) two or more unqualified jurors were permitted to serve on the jury; and (iv) "many" of the jurors who served had friends and family in law enforcement.  Dkt. 1-3 at 18-22.

As a threshold matter, in denying Bethune's § 440.10 motion, the state court concluded that Bethune's claim as to his counsel's failure to properly record voir dire was procedurally barred pursuant to CPL § 440.10(2)(c). Dkt. 8-4 at 7. Habeas relief is thus not available to Bethune for this claim. For an independent and adequate state ground to bar habeas relief, the state court rendering the judgment must "clearly and expressly state that its judgment rests upon a state procedural bar." *Whitley*, 642 F.3d at 286. Here, the Kings County Supreme Court clearly and expressly stated that this claim was procedurally barred. *See* Dkt. 8-4 at 82 (holding that this was a record-based claim that should have been raised by Bethune on direct appeal and "failure to do so requires summary denial of this claim").

Moreover, Bethune has failed to demonstrate that he is entitled to an exception to the procedural default rule, because he has not shown either (1) cause and actual prejudice or (2) that a fundamental miscarriage of justice would occur if the merits of the federal claim were not considered. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citations omitted); *Coleman*, 501 U.S. at 748; *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011). Even if this claim was not procedurally barred, however, as discussed below, it still fails on the merits.

All of Bethune's ineffective assistance claims concerning jury selection are without merit. Bethune did not submit any sworn allegations in support of these arguments, nor has he demonstrated how the fairness of his trial was impaired by the

selected jurors.  *See Hartley v. Senkowski*, No. 1:09-CV-395, 1992 WL 58766, at *2

(E.D.N.Y. Mar. 18, 1992) ("petitioner's vague and conclusory allegations [of ineffective

assistance] carry very little weight"); *People v. Thompson*, 997 N.E.2d 1232 (N.Y. 2013)

(finding that the record provided no basis to conclude that the defendant was

prejudiced by the selection of a particular juror).  Additionally, the only person who

Bethune identified as having connections to law enforcement who served on the jury

unequivocally stated that he could be "fair and impartial."  Dkt. 8-5 at 204.

      Regardless, trial counsel asked probing questions during voir dire,

exercised peremptory challenges, and lodged appropriate for-cause challenges.  *Id.* at

134-42, 175-81, 207-11.  The individuals selected for the jury all indicated that they could

be fair and impartial, and retrospective criticism of the strategy used to select a jury

does not establish an ineffective assistance of counsel claim.  Dkt. 8-5 at 204; *see also*

*People v. McCullough*, 679 N.Y.S.2d 227, 228-29 (4th Dep't 1998) ("Defense counsel made

a tactical decision in selecting some members of the jury pool over others.").

Accordingly, Bethune's ineffective assistance claims regarding jury selection fail.

    **c.**   *Expert Witness Claim*

      Lastly, Bethune claims that defense counsel was ineffective for failing to

hire an expert witness to advance the theory that the shooting was accidental.  Dkt. 1-3

at 23.  But Bethune's trial counsel elicited testimony on this point through the cross-

examination of Detective Kraljic.  Detective Kraljic acknowledged that a firearm can

23

accidentally discharge, that an individual may be unaware a firearm is loaded, and that

a firearm with a defective trigger could discharge with less pressure applied to the

trigger.  Dkt. 8-5 at 597-600.  This testimony was favorable to Bethune's theory of the

case, and so it is not apparent what additional information a defense expert could have

offered, especially here, where the firearm was never recovered.  In any event, Bethune

has pointed to no evidence that his trial counsel's failure to call such an expert was not

sound trial strategy.  *See United States v. Eyman*, 313 F.3d 741, 743 (2d Cir. 2002) ("failure

to call a witness for tactical reasons of trial strategy does not satisfy the standard for

ineffective assistance of counsel").  Bethune's ineffective assistance claim as to his

counsel's failure to call an expert witness therefore also fails.

  **3.**  *The Sufficiency of the Evidence*

    Bethune next argues that the jury verdict was against the weight of the

evidence presented at trial.  Dkt. 8-4 at 2.  Specifically, he argues that the People's main

witnesses were not sufficiently credible to establish that he was guilty of the crimes for

which he was accused.  Dkt. 1-3 at 38.  The Appellate Division considered the claim on

direct appeal and affirmed Bethune's judgment of conviction, finding that the

conviction was supported by the weight of the evidence.  *See Bethune I*, 12 N.Y.S.3d at

903.  This determination is entitled to "substantial deference," *Fischer*, 780 F.3d at 560,

and will not be overturned by a federal court conducting habeas review unless the

petitioner can establish that the state court's conclusion was "unreasonable," *see* 28 U.S.C. § 2254(d).  Bethune has failed to do so here.

Defendants in a criminal trial may be convicted only upon proof establishing their guilt beyond a reasonable doubt.  *See Jackson v. Virginia*, 443 U.S. 307, 309 (1979).  When reviewing a claim that the evidence introduced at trial was insufficient to sustain a defendant's conviction, the reviewing court applies the standard set forth in *Jackson* to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* at 319 (citation omitted).  In doing so, the court defers to the jury's assessment of both "the weight of the evidence [and] the credibility of witnesses."  *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) (citations omitted).  Furthermore, a petitioner "bears a very heavy burden in convincing a federal habeas court to grant a petition on the grounds of insufficient evidence." *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) (quoting *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999)) (internal quotation marks omitted).

The evidence presented at trial detailing Bethune's movement and actions was more than sufficient for the jury to find intent beyond a reasonable doubt.  Through eyewitness testimony, the evidence established that Bethune brought his loaded revolver on an overnight visit to Edwin Rodriguez's house, that Bethune showed Rodriguez the bullets in the gun, and that Bethune walked up to Marquis, pointed the

revolver at his head, and fired twice.  Dkt. 8-5 at 429-30, 496-98.  Detective Kraljic also testified that it would be "extremely rare if not almost impossible to have two live cartridges accidentally discharge from a revolver."  *Id.* at 601.  Lastly, two videos and one written statement contained admissions by Bethune that he held and fired the gun.  *Id.* at 346, 350, 372.  The compelling evidence at trial was sufficient to support the jury's determination that Bethune intended to kill the victim, and thus the jury's verdict convicting Bethune of intentional murder was not against the weight of the evidence.  The Appellate Division's determination was therefore reasonable.  Bethune's sufficiency of the evidence claim accordingly fails.

### 4.   *Correction of the Transcription Error in the Record*

Bethune's final argument is that the trial court erred by settling the court reporter's certified trial transcript without holding a hearing.  The trial court did so to correct a typographical error -- the word "unintentional," that had appeared five times in the original certified transcript.  Dkt. 1 at 8; Dkt. 8-3 at 36-37.  Relying on the typographical errors in the uncorrected transcript, Bethune argues that the trial court violated his right to a fair trial by giving erroneous supplemental jury instructions on intent when charging the jury that intentional murder was an "unintentional" crime.  Dkt. 8-3 at 44-45.  But the Court of Appeals considered the claim on direct appeal and affirmed Bethune's judgment of conviction, finding that the record made clear that the stenographer committed the error; thus, the trial court did not abuse its discretion by

correcting the transcript without holding a hearing.  *See Bethune III*, 81 N.E.3d at 836.

This determination is entitled to "substantial deference," *Fischer*, 780 F.3d at 560, and

will not be overturned by a federal court conducting habeas review unless the

petitioner can establish that the state court's conclusion was "unreasonable," *see* 28

U.S.C. § 2254(d).  Bethune has failed to do so here.

"[T]he court may at any time correct a clerical error in a judgment, order,

or other part of the record, or correct an error in the record arising from oversight or

omission."  Fed. R. Crim. P. 36.  As the Court of Appeals noted, there was ample

evidence that the jury was not instructed incorrectly, including "the affidavit of counsel

recounting a conversation with that reporter as to the reason for the discrepancy in the

two transcripts, and the context of the purported error." *Bethune III*, 81 N.E.3d at 836.

Indeed, in each place where the transcript said "unintentional" rather than "intentional,"

the context in which the court is speaking makes clear that that the court said

"intentional" rather than "unintentional."  Notably, the court instructed the jury to

reconsider the repugnant verdict because murder is an intentional, not an unintentional

crime.  Dkt. 8-5 at 693.  The Court of Appeals' decision that the trial court did not abuse

its discretion when it settled the transcript without holding a hearing was not

unreasonable.  This claim therefore fails.

*CONCLUSION*

Bethune has failed to show any basis for relief under 28 U.S.C. § 2254.

Accordingly, the Petition is denied.  Additionally, I decline to issue a certificate of

appealability because Bethune has not made a substantial showing of the denial of a

constitutional right.  *See* 28 U.S.C. § 2253(c)(2).  Pursuant to 28 U.S.C. § 1915(a)(3), I

certify that any appeal taken from this decision and order would not be taken in good

faith.

The Clerk of Court is respectfully directed to mail a copy of this

memorandum decision and the judgment to Bethune at his last address of record.

SO ORDERED.

Dated:       New York, New York
             August 7, 2024

DENNY CHIN
United States Circuit Judge
Sitting By Designation